Our next case, the call of the docket is agenda number 15, case number 113474, Robert Lee Coulter versus Amy Eleanor Trinidad. Counsel for the appellant. Good morning. Norman Rupert with Eric Schwab on behalf of Amy Trinidad Coulter. Excuse me, you want to pull that microphone down a little bit? Sure. Is that okay? That's perfect. Your Honors, we believe that Amy Trinidad has the right to rely on the terms of her joint parenting agreement that are authorized by statute, were incorporated into a judgment for dissolution of marriage, and are consistent with Illinois case law. These terms include her right to remove the children to Southern California three years after the judgment for dissolution of marriage was entered. And we think it's important to point out, given the briefs and the issues in this case, that the Illinois Marriage and Dissolution of Marriage Act obviously does not say that agreements regarding children are unenforceable. It says that they can be, always be modified. And unless and until they're modified, we believe they remain as valid court orders that should be enforced. We identify the central issues of this case before the court to be what weight should a removal agreement in a court order be given, and under what standards can such a removal agreement be modified. And we think these issues need to be resolved in order to determine if the appellate court was in error when they reversed the trial court denial of a preliminary injunction. The appellate court order was in part, or in substantial part, based on the decision of marriage in Boehmer, where in Boehmer the trial court granted the wife's motion to enter an extrajudicial, non-court approved agreement as an order of court, and that was done over the objection of the husband. We think the most important distinguishing fact of Boehmer is that Boehmer, the court refused and really didn't hear any other evidence regarding the children's best interest. It limited itself to entering this extrajudicial, not approved by the court agreement. In some extent, or to some part, we look at Boehmer as a marriage of bliss at situation, and bliss at this court refused to enforce a waiver of visitation that was made in exchange for a waiver of child support. So it's not a new proposition of law that agreements regarding children that are not entered into court orders are not enforceable. The distinguishing fact about Coulter, of course, is that the removal agreement was incorporated into a judgment for dissolution of marriage. And when that happened, the court was making a best interest finding. It was simply making the best interest finding by removal, excuse me, by agreement as opposed to a finding after litigation. From our perspective, we don't see any distinction between whether or not that finding was made either via agreement or via litigation. And we think that any modification of that proceeding, of the judgment, excuse me, of the removal provision incorporated into a court order needs to come under Section 610B in this case and its clearing, excuse me, and its clear and convincing standard. So you're saying that the husband could have petitioned the court to modify the agreement at any time. So why couldn't the circuit court be allowed to do it and have a best interest hearing? In Coulter, in our case? Yes. I think the vehicle for the court to consider all the best interest evidence is under 610B. We think the court can consider the evidence. It just should be in a context where the party petitioning the court to change its order needs to show by clear and convincing evidence there's been a substantial change of circumstance or a change of circumstance. But the husband could have petitioned the court for that. The husband could have petitioned to modify correct. We believe under 610B would be the proper and perhaps on remand the appropriate procedure to follow. Yes. So instead of the mom having the responsibility to show it's in the best interest for removal, this incorporation of the agreement into the joint parenting agreement and part of the dissolution would shift the burden to the father in this instance to come into court, show it needs to be modified, and then it would be his burden to show a change of circumstances. Correct. And we think that's the appropriate procedure because the best interest finding has been made. And that's what distinguishes this case to a large extent from Bowmer. When was the best interest finding, actually the agreement, there were no specific findings made by the trial court at that time? When I say the best interest finding was made, I'm relying on the judgment for dissolution of marriage. In the case law, I believe Ayers was a case where the court recognized, in Illinois, it's longstanding that the parties can come to a stipulated custody agreement. Custody agreement, but we're talking about the removal, the agreement. There were no specific findings by the trial court at that time. The joint parenting agreement was just signed off but then adopted by the court when it entered the judgment for dissolution of marriage. And what our argument is, by stipulation, by agreement, when the parties submitted the joint parenting agreement and the court adopted it, it was authorized to do it by Illinois law, and that is the best interest finding that we're arguing is applicable. The one where the court entered the judgment for dissolution of marriage that incorporated the joint parenting agreement. Was any of that done when the emergency petition for TRO was filed? Well, that was done. What type of hearing occurred there? Well, there was a hearing on a preliminary injunction, and that was the hearing that was reviewed by the appellate court. The best interest, the joint parenting agreement was entered in May of 2008 when the judgment for dissolution of marriage. And there was no subsequent litigation until Mr. Coulter brought his petition for a TRO and a preliminary injunction. The trial court found that there was no emergency, and then we had the ultimate hearing on the preliminary injunction. Was there discussion at that time about a 610B hearing? The only discussion would have been, it was raised in our response to Mr. Coulter's preliminary injunction or temporary restraining petition. So it was raised in the pleadings. I don't believe it was argued or referenced in any way in the court. So in dovetailing off Justice Garmon, your position is this can all be handled, but you want the burden to rest on the husband here rather than the wife. We think that all the best evidence interests when it comes to children does come in. We think that it's post-judgment finding best interest. It should be under 610B as our initial position. And I suppose our fallback position, looking at some of the case law, would just be a simple shift of the burden of proof to the husband to show best interests are now contrary to what's in the agreement. That is our position. What language in the joint parenting agreement specifically granted her leave to remove the children to California? I would have to actually go back and review it, but I'm pretty comfortable that it has specifically, there's Article 7 that talks about removal. It says three years after judgment for dissolution of marriage, the wife is entitled to remove all three children to Southern California. That's the language that we are relying on. And then Amy Trinidad waited three years. She didn't go after two years. She didn't seek to go after two years. So she waited in reliance and based on her belief that that joint parenting agreement incorporated into a judgment for dissolution of marriage was a valid and enforceable court order. We see three possible meanings. Let me just stop you. Where in the JPA is there an indication that there was a best interest determination made? I don't believe that the quote-unquote best interest language is specifically in that agreement, but I do believe that case law provides that when the parents agree, when the parents submit an agreement regarding the children to a court, the presumption is that because it's the parents that it's in the best interest. But to answer your question, Judge, I don't believe it specifically says best interest. But I'm wondering how a determination like that can even be made. In this case, three years passed between the judgment that incorporated the JPA and the removal issue that we're dealing with now. Can a court make a determination at that time that by the fact that they agreed back in 08 that necessarily it's in the children's best interest in 2011? If there's something different, if something changes, if the circumstances are not what the parties foresaw, then they come in under 610B. And then they show this is what difference, this is what's changed, this is what we didn't foresee, this is what we didn't contemplate. Therefore, it's appropriate to modify the agreement. Certainly, I think as we argued, if there's no motion filed, if there's no contest of it, I believe she's entitled to move after three years. I don't think it would be appropriate to suggest that in that circumstance she needs to come into court and get leave when there's no dispute. It's only when Mr. Coulter raises the issue that then, you know, the procedures begin where we think 610B is the appropriate methodology. Didn't she, in fact, go to court to seek removal? We filed after Mr. Coulter initiated the injunction litigation. We did file for temporary and permanent removal. And it was a situation where we thought the issue was before the court. The law is unclear. We thought it was appropriate to frame the issues. We did that with the pleadings for temporary and permanent removal. And we did allege they had an agreement. This is our basis for going forward. So we weren't taking a separate position or a contrary position, but the issue was before the court. We were in the litigation. We thought in that context it's appropriate to put our position and our frame of the pleadings and the issues in a petition for temporary removal. I suppose I think at worst it was unnecessary, but I do think given the ambiguity and the uncertainty in terms of what that agreement meant, once the contest began it was certainly appropriate to file the petitions for temporary and permanent removal alleging the same facts, meaning that we had an agreement and it hasn't been modified. How does, if at all, the provision for either arbitration or mediation work into this absolute allowance for removal? My recollection is that in this agreement it was between 24 and 36 months, that either party could take the issue to mediation if they wanted to remove, if Amy wanted to leave before that. So after 36 months, it was a, the agreement was that she would then be able to remove to Southern California. May I ask about the current status of the case? Yes. And this case obviously has had a very complex twist in terms of procedure. And I think my first question, of course, is what are we reviewing? We're reviewing the October 20th, 2011 order. Is that correct? The rehearing in the appellate court order in which the court basically remanded to the trial court for additional hearing. Correct? Correct. So after the appellate court entered its order that essentially gave us the opportunity to put on a defense to the petition, we put on the defense. The trial court then ordered, you know, consistent with the appellate court mandate, ordered Amy Trinidad Coulter to come back to Illinois by December 31st with the children, the two children with her. She did come back to Illinois by December 31st. We had filed then our motion for a stay and our motion for, excuse me, petition for leave to appeal in this court. And on or about January 6th, this court granted the motion for a stay. Amy and two of the children returned to California. And the removal hearings and where we go from here on that issue obviously is before the court. On November 3rd, the appellate court mandate issued, correct? Yes. And the trial court was very prompt and proceeded maybe November 22nd. They heard the case and set it for a hearing on December 5th. And as you say, the case went forward. Yes. And after the court made its decision, then you filed the petition for leave to appeal December 8th. From the order from December 3rd. So here we have a situation where the appellate court clearly had jurisdiction of the case and remanded the case to the trial court, reinvesting the trial court with jurisdiction. Yes. Right? Yes. And then in that same period, the time for running to file a PLA was right. So and then I think there's no dispute that you filed your PLA promptly. Right. But, again, I have a jurisdictional problem. Between the time of the appellate court's mandate issuing and the time that this court had its petition pending, the trial court was moving forward in this case. The appellate court remanded. Well, that's kind of my point is where is the jurisdiction? Well, they remanded. They remanded to the trial court, and yet you are filing a petition for leave to appeal in this court from the appellate court's opinion. So it sounds as if we have two tracks going on. We've got the appellate court opinion of November 3rd, and that's what we're reviewing here. You had your 35 days to file the PLA, and you did that. But in that 35 days, the case went back to the trial court, and the trial court had jurisdiction and went forward. So we seem to have two different tracks going on here. We have something going on in the trial court, and we have something going on in this court at the same time. I suppose I think that the proceeding in the trial court was limited to compliance with the appellate court mandate that really wouldn't affect the jurisdiction of this court on the overall issue of the PLA, that the PLA raised. So I don't think that the trial court could go much past, you know, the issue on remand, but I don't see what other procedures could realistically be followed. We have to have the hearing back in the trial court. Or you could have continued with your petition for leave to appeal here. Since ultimately that is what you were doing. You were challenging not what took place during the remand, but in fact the appellate court decision from November the 3rd. True. But given the unique circumstances of this case, I don't know what other procedures could have been followed, because the appellate court sent us back to have a hearing. So all we did in the trial court on issues relating to removal at all was have the hearing and then at the conclusion of the hearing filed for the motion first stay and the petition for leave to appeal. And I'm going to cause one more problem by suggesting this. What does the effect, then, of the order of December 5th of the trial court where it in fact granted the injunction, how does that affect the November 3rd order? The November 3rd is the appellate court's order, but obviously the denial of the original preliminary hearing in June of last year. The order that we're looking at today, the order that's before us today, is it moot? It's no, no, no. The issue had been something I had thought about. But, no, I don't think it's moot because the principles and the underlying theory of the appellate court order still drives the ultimate outcome of this case and really still drives the end of the result of the removal or essentially what's the meaning of the joint parenting agreement incorporated into a judgment. So I don't see it as moot. I just see the issue concurrently playing for a limited purpose in the trial court, again, only to deal with the issue on remand. And I don't really think that would affect the jurisdiction of this court or cause a party to have to refile a PLA or a notice of appeal or anything after a limited hearing on remand. I do agree that you couldn't have gone into any other issues related to the matter on appeal because of the jurisdictional question. To follow up on Justice Tice's question and really to clarify in my mind, as she pointed out, the matter before us is the appellate court decision remanding to the trial court to consider the denial of the preliminary injunction. The granting of the preliminary injunction is not before us based upon that order. Is that correct? Correct. But you're wanting us to get to the issues that are involved in the appellate court's decision to remand it for a hearing and those issues being does the joint parenting agreement establish best interest so that Amy doesn't have to go through the petition for removal proceeding? We believe that in order to determine whether or not the appellate court order was correct, one needs to determine the validity and enforceability of the joint parenting agreement. I don't think they can be segregated. I don't think you can review the injunction or whether or not the appellate court was correct in issuing the injunction without deciding that threshold fact, because that's the whole linchpin of the appellate court opinion. And our disagreement with it was that Amy needs leave of court to remove. All we're doing here is ordering her not to do something she's already prohibited from doing. But that completely ignores the fact that Amy does have leave to remove. And, again, by agreement, sure, but still leave to remove and in a court order. So if you want to modify that, then we think it's the 610B situation. And, again, I would like to point out that sometimes, of course, you need to look at the alternative. And I think if you're saying to people you can't agree to a valid removal, an agreement to remove, and put it in a court order that's not going to be binding, you're going to be creating a situation where people are going to have to litigate these things. We're not suggesting that you can enter into an order regarding a child pertaining to removal or anything else that could never be modified. That's kind of what they want our argument to be, but it really never was in the trial court and is not now. We're just saying that the order needs to be modified by procedures already in place. Thank you. May it please the Court. My name is Stephen Boddy, and I represent Robert Lee Coulter. What we're asking this Court to do is to affirm the appellate court decision, reversing the trial court's denial of Mr. Coulter's petition for preliminary injunction. We're all aware that back on July 13th of 2006, a joint parenting agreement was entered by the court, and the joint parenting agreement was deciding what was going to happen upon dissolution of marriage with three children, Carina, who was then eight, Camille, who was then seven, and Gavin, who was then three. Children are a little older now. Carina is 14, or was at the time of the hearing. Camille is 11, and Gavin is eight. And we are all aware of this provision in the agreement about removal, and one of the issues I wanted to discuss with the Court today, if we get beyond this jurisdictional issue, you never know, is what does that removal provision mean now? And to me, all that removal provision means now is that five years before this litigation started, and six years before today, the parties agreed to removal sometime down the road. Now, certainly it's been briefed that there is law about what such an agreement like this evidences, or what such an agreement like this implies. The law is very simple. It is evidence that back in 2006 that this agreement was not in, that was in the best interest of the children. It's evidence of it. That's what the case law says. But we're not talking about 2006. We're talking about one year ago, and we're talking about three children, two of them who are now in California, one of them who is in Illinois, separated by thousands of miles, a family that has been torn apart by this. And all you have to do is read the GAL report and the 604B report, which are part of this record. If you don't want to see the effect, if you want to see the effect that this has had. Mr. Bowdy, what's wrong with Mr. Ruber's solution that file a 610B and have a 610B hearing, show how there are these changes that you're bringing up to us today? Obviously the burden would be on your client. You know, I thought of that, and during this case I thought of filing a petition just to modify that provision. But what stopped me was that I had Mr. Ruber filing a petition for temporary removal. I had Mr. Ruber filing a petition for permanent removal. And I had a court stating unequivocally many times throughout the record, you're entitled to your day in court on the issue of removal under Section 609. So with those two petitions pending, their position being it's necessary and the court's position being it's necessary, I didn't see any reason to file a 610 petition to modify an agreement where we all agreed that you had to have a best interest hearing under 609. That answers your question. The joint parenting agreement provides that the parties agree to mediate or discuss this issue? Yes. Did Mr. or your client, did he attempt to enforce this agreement to mediate? I don't think there's anything on the record about attempting to mediate this issue. I know that there were e-mails and letters going back and forth between the parties. I don't think they ever sat down with a professional mediator that we often use in family law cases to mediate this issue. There were two notices of her intent, one in May of 2012 and another in February of 2011 to invoke the removal provisions of the agreement. Correct. And there was. They sent notice. And if you look at what Mr. Coulter did on July 21, 2010, after their first correspondence of May 3, 2010, Mr. Coulter e-mailed Ms. Trinidad and informed her that he had not agreed to move to California. And if you look at the examination at the second hearing of Ms. But he did nothing regarding the request for mediation. No, I don't believe that they ever sat down to mediate. I think there was nothing to mediate. Mr. Coulter was against it and Ms. Trinidad was for it. But under examination at the hearing, Ms. Trinidad unequivocally admitted that she interpreted Mr. Coulter's e-mail that Mr. Coulter did not want Ms. Trinidad to move. Tell me what you believe that provision of the joint parenting agreement says and means. I think that provision of the joint parenting agreement says and means that in 2006 the parties agreed that three years after the judgment is entered, which means ended up being a two-year drag-out divorce case and a trial. So it was five years down the road that at that time they will allow Ms. Trinidad to remove the case if the parties go through certain things such as mediation. That's agreeing to something down the road regarding children's best interests. And that's all we're concerned about here. What does it mean? It says without any contest from the father as to a removal. That's true, but it doesn't say without leave of court either. So there's a big difference. So it means that what you're saying is she could and should have petitioned for a removal and he agreed he wouldn't contest it. No, it said that he's not going to contest the removal, and at that time that's what it said. But it never made a finding that this provision is in the best interests of the children. It never made a finding in this agreement, and it never made a finding in the judgment which incorporated the agreement. It was just attached here to, and there's the agreement. So should the parties be encouraged as a matter of policy to, in other words, to settle when you're negotiating the dissolution? Sure. Should the parties be encouraged to negotiate all these terms so that you have less litigation down the road? You're always, and that's one of the provisions in the statute, to try and get matrimonial lawyers and parties to negotiate all the provisions of the agreement. But there's a difference between negotiating something now that's in the children's best interests instead of just hoping and guessing what may be in the children's best interests five years from now. There's a simple solution for this. I said this the first day in my opening statement for the hearing. I said this many times. Why don't we just have a best interests hearing? Why are we guessing? These are children we're dealing with here. What are we doing going on what someone said six years ago? There was so much time to do this. I came in running into court in March. The House was listed for sale either March 1st or March 2nd. March 3rd, I was in court. Those children were still in school in Naperville. March, April, May, June. Why didn't you file a 610 motion? Because I answered. Ben, today you're saying that you're not going to do that because the courts have ruled. I filed a petition to modify custody. I didn't file a petition just to modify visitation. I wanted a petition to modify custody. Ms. Trinidad was moving to California, and we filed a petition to modify custody contemporaneously with that petition for injunction. And then as the case played out, when they brought those petitions for removal, temporary, which I don't understand to this day, and permanent, which I certainly very well understand, there was no need to file a petition for modification. by presenting those motions, at least in the way the court was ruling, that they had to have a hearing, and we were entitled to a best interest hearing on removal. Those children are entitled to a best interest hearing on that removal. It never happened. It should have. Is that what you are saying is the clearly ascertainable right in need of protection that justified an injunction? The clearly ascertainable right that needed protection was Mr. Coulter's right to have parenting time with his children, and that clearly ascertainable right is going to be severely restricted and was severely restricted and has been severely restricted by these children moving to California. Because if you look at the amount of time this man was spending with those children, Cub Scout leader, all the activities he was involved in, he can't do that anymore. And, you know, while Mr. Coulter is losing out, those children are losing out, too. And that's the problem with this. All you had to do is have a best interest hearing. We wouldn't even be here if there had been a best interest hearing, unless we go on the abuse of discretion standard and someone didn't like the best interest hearing. But that's the issue before this Court. Just quickly on the jurisdictional thing, Mr. Cotter. Sure. Do I have this wrong? Didn't the appellate court not only say go back to having a hearing, they said that the trial court was wrong in denying the preliminary injunction. Isn't that right? I somewhat disagree with counsel and my esteemed opponent's representation as to what the appellate court said. The appellate court reversed the trial court. I questioned Judge Braun on that. I thought he was just reversed. Judge Braun interpreted that order on his own, that we have to finish this injunction hearing. It wasn't a direction from the appellate court. I have less problem with the jurisdiction based on what the appellate court said. I think I understand where Mr. Ruber is coming from when he says that it was a remand for a limited purpose. If we reverse the appellate court here, if we were to agree with his position and reverse the appellate court, it's reversing now the preliminary injunction, isn't it? That's what you would be reversing. Because as I read the order, they didn't say go back and have a hearing. I agree. They reversed the denial of the preliminary injunction based on the previous hearing, didn't they? That's exactly what they said. Okay. And that's what I was questioning with Judge Braun. But Judge Braun said, this is how I'm interpreting this order. And I didn't see any direction from the appellate court, but I was there, so I went along with it, and we completed our hearing. Because otherwise, if it was a new hearing, you would think that the trial court would say, what am I doing having a hearing until the Supreme Court chimes in on whether or not a preliminary injunction, that the first decision made by the trial court, the denial of the preliminary injunction, whether it was appropriate or not. Well, the hearing was a continuation. If you look, it wasn't really a denial of a preliminary injunction. It was a motion at the close of my case in the nature of a directed finding. But it was a motion at the close of my case. And what Judge Braun did and what they felt was that, well, it was a motion for a directed finding, so we must finish the hearing. The appellate court had indicated that we put on our case in chief. We had already proved it. It didn't say you have to go back and put on Ms. Trinidad's case. And maybe it would be helpful to read this in the record here. It says, in this case, the appellate court, a grant of a preliminary injunction to petitioner would preserve the status quo. And it said, in effect, the preliminary injunction would do more, I'm going on here, than prohibit responding from an act. Then they go through the elements of preliminary injunction. And it says, therefore, we believe that the trial court abused its discretion when it denied petitioner's request for a preliminary injunction. Correct. I don't see anything about having a new hearing here. I don't either. And I never did. But they did. The judge did, and that's what the judge said he was going to do, and that's what we did. Okay. Is your public policy argument as simple as there should be best interest hearings in these circumstances, period? I think you can't, you know, when you get an order like this, and, you know, I'm not a judge, but if I were sitting there, I would have read it, and I would have looked at it and gone, guys, I don't know about this. I don't know whether or not I'm comfortable entering an order today allowing removal potentially five years down the road, because this was a complex property division case. And I think that's something that I'm uncomfortable with doing, and that is against public policy. We can't predetermine what's in the best interest of the children five years from now. We should have a hearing at that time. These are children. These are real, living, breathing children that we're talking about. Let's not predetermine what's best for them now. What's wrong with having a hearing? All the litigation in this case and all the time that went by from March when we first came in until they started school in California in August, we could have certainly done all the work, had the 604B, had everything. I was asking for that since day one. Let's have that hearing. They filed their motions. Let's have that hearing. It was set, if the court notices, in June when we set this matter on June 17th after the denial of the injunction, the matter was set for hearing in October. Then the appellate court came down, so there was no need for hearing anymore. They didn't pursue that hearing. Maybe they should have pursued that hearing. I don't know. But the appellate court came down, sent it back. The mandate hadn't issued yet prior to October 17th, but we had the decision from the appellate court. Let's talk a little bit, if I may, about this injunction that I think we're here today. I'm going to address one of the issues in the injunction, likelihood of success on the merits, and that issue also raises the sub-issue of what is the status quo. We're all familiar with the elements of an injunction. A party seeking a status quo order does not have to establish that he is likely to succeed on the merits. And what they've argued, and they haven't argued today, but it's in their brief, what was the status quo at the time of the hearing? Their saying is, well, she was anticipating a move to California. I can't see how anyone can say that the status quo was nothing more than those children resided in Naperville. They'd resided there and gone to school in Naperville for years. They had been in the house that Ms. Trinidad purchased since 2009. They'd resided in Naperville since 2003. As late as April of 2011, Ms. Trinidad was taking an exam to get an Illinois teaching certificate. And, again, even as of the hearing, there still weren't firm plans to move. She didn't have a job. She was staying with family. She hadn't leased an apartment or purchased a house, and she hadn't enrolled the children in school. So I believe the status quo was Naperville. But if the court looks differently, if they look at this agreement as setting some status quo in 2006 for this removal, I think that Judge Braun put that to rest in his findings on the second hearing when he said that after reviewing the GAO report, which recommended against removal, and after reviewing the 604B report, which recommended against removal, it seems to me that this is no longer a close case on the issue of likelihood of success on the merits. So however you want to say it, if status quo is Naperville, we didn't have to prove it. If we do have to prove status quo, then I think Judge Braun made that finding, and I think all you have to do is look at those two reports, two impartial people who said no, no removal. It's not in the children's best interest. You know, Amy Trinidad herself realized that there was a need for a best interest hearing under 609 because she filed a petition for one. The court indicated that Mr. Coulter would receive his day in court on the underlying removal petitions and that there was a need for a removal hearing. In fact, and I think the one part of this case that bothers me the most is when the trial judge even suggested to Ms. Trinidad that she shouldn't go to California. And I'll quote him, probably the worst thing for everybody, the children and the parties, would be for the children to go out to California and then have to be brought back next fall or winter. And that was before the appellate court even ruled. We were all anticipating a best interest hearing. When he was making those statements, he thought it was close. That was before he received the reports from everybody. Now it's not even, you know, according to him, as far as likelihood of success on the merits, it isn't close. So I'll end with this. The court, Ms. Trinidad, Mr. Coulter, all agreed there has to be a best interest hearing. There has to be a 609 hearing. Everyone agreed to it. It was set for a hearing. And that has to occur prior. If you look at Illinois law and you look at Fisher v. Waltrip and all the cases, prior to removing. If there's a 609 hearing involved, if it's required to have a 609 hearing, you have to have that hearing prior to removal. So what I'm asking you justices to do is to affirm the appellate court, return to the status quo, which I may add is Naperville, Illinois. And please, not southern Illinois, not central Illinois, even though it's beautiful. It was a beautiful drive down here. Not southern Illinois or central. The status quo was Naperville. She certainly receives enough money and support to afford to live there until we have a best interest hearing and let the cards fall where they may at that hearing. Thank you very much. Let me, if I could please, clarify the procedural aspects with the appellate court. At the conclusion of Mr. Bonny resting and his case in chief in the motion for preliminary injunction, we made a motion for directed finding. That motion for directed finding was granted by the trial court. That's the issue that went up on appeal. When the appellate court ordered, excuse me, when the appellate court entered that order, the statute on directed verdicts say if it's denied, defendant gets to go on and put on their case. When the appellate court issued their initial order, they just outright reversed and remanded it without giving us the opportunity to put on any evidence at all. That was, I believe, procedurally improper. I filed a motion to reconsider saying essentially, you know, we get to put on a defense, that's what they send it back for, and it was that hearing that was the hearing that was conducted in December. And so what kind of hearing was it? Was it a best interest hearing? No. What kind of evidence was presented in that hearing? It was our case in chief in defense to counsel's petition for preliminary injunction. That was the December 5th hearing. What was the evidence that you put on? Well, at that point, given the appellate court order, it was the ultimate useless act because that appellate court order made it clear that the only way, in their opinion, that Amy Coulter can go to California is if in this proceeding she has an order permitting removal. They gave no weight at all to the previous, to the joint parenting agreement. We had filed our petition for temporary removal, and after it be heard concurrent with the injunction, the trial court said let's do the hearing for the injunction first, and then after that we'll go wherever we go with the other issues. Was the discussion in the context of the remanded preliminary injunction hearing your case as to the best interest of the children? No, there was not. Did they, appellate court, grant your motion to reconsider? They issued an amended order with the only difference being that at the end of the order, it said reversed and remanded as opposed to just being reversed. So they issued the verbatim order with a remand. Regardless, there'd be a remand to either enter the preliminary injunction as they indicated they should in the order. I mean, they go through the elements. I can see your position that it was based in direct confining, you didn't get to put on your proof, but again, we get back to this appellate court order. Correct.  Well, what's the difference? I don't know that there is a big difference, substantively. I was just trying to explain procedurally what happened so the court was clear. I would like to address, of course, the status quo issue. From our perspective, the status quo is changed by the preliminary injunction because the status quo changes the legal rights of the parties. The status quo would certainly change from Amy's Coulter's perspective because she was told she can go to California and made all the plans to move, et cetera. And I think the problem with their argument is they want this court to establish a status quo in essence as if we live in a world where there are no laws, there are no court orders, there are no rules. They see no difference between Amy having a valid judgment that says she can go and Amy having nothing. And frankly, the appellate court saw no difference in their order between Amy having a court order and Amy having nothing. And that, to me, is not correct. I don't think it's their physical location that matters. It's their legal status. I think that's the most significant point. And in terms of counsel's point that we made, this agreement was entered five or six years ago, and it involves children. You know, people agree to custody on infants. That involves the next 18 years of their life. There's nothing wrong with people agreeing that this is going to be good for our children. Now this will be good for our children. We believe in the future. And, again, we're not suggesting that can't be modified or that can't be changed. We're suggesting that the statute gives, provides the methodology to change that. So to me that it was five years ago, ten years ago, really is no different than people agreeing to custody, educational decisions, medical decisions for their children that could last a lifetime. There is a methodology in the law to modify a court order. And we think that's, we think that's 610. In terms of irreparable harm, it was, it was foreseeable, meaning that Mr. Coulter agreed to it. It's hard for us to believe that you can agree to something and then, and then say when the time comes to perform that it's prejudicial. And the other point I think that needs to be made is that there is no question that when a parent moves children across the country, it impacts the relationship the children have with the parent that doesn't remove. I mean, that's the difficulty in all removal cases. That's why the law provides that the issue is whether or not you can develop a parenting schedule that will maintain that relationship. That's the real irreparable harm issue. If there, it would be impossible, if it was pled and proven, it would be impossible to establish a relationship to maintain what Mr. Coulter has with his children or any party has with their children, then you get into perhaps an issue of an irreparable harm. But to make a blanket statement that says any time you're going to impact the relationship, there can't be removal, then you're establishing that no one can remove. Your argument on status quo, isn't that the situation in every preliminary injunction where someone's trying to enforce what they say is a right that they have under a contract or an agreement that they can do something, but isn't the status quo the actual physical, the facts that are in existence at that time that's being maintained? Wouldn't that argument apply to every situation, the status quo? You've got a right to do this, so go ahead and do it until the court says otherwise. I think the distinction is the court order. You know, absent the court order, the court order from our perspective. Because it was made part of the judgment. Yes. Okay. Correct. Didn't Ms. Trinidad file a 609 best interest? We filed after litigation started. Once Mr. Coulter brought the issue in court via his preliminary injunction hearing, we did file at that point for temporary removal. We did not file beforehand, but in the temporary removal petition, we argued the joint parenting agreement and said you need 610B to get out of it. We were just, from my perspective. Because it was after, there's no type of waiver or estoppel type argument then? No. I think because had there been no objection from Mr. Coulter, we think it's pretty clear she can just leave because she had a court order authorizing it. So people come to an agreement, it's in a court order, there's no objection, everybody's on board, she leaves. I don't think the law would require somebody to affirmatively come in, file a petition, et cetera, et cetera, when there's already an agreement in a court order. But she did file a petition. After the issue was, yes, after the preliminary injunction hearing started, after the post-decree litigation started on the injunction, we did. Had Mr. Coulter not brought any litigation, we would not because we already had, from our perspective, an order permitting her to go. Mr. Ruber, to follow up on Justice Tice's earlier question about the procedural posture, how it may or may not impact jurisdiction, you have mentioned there was a December 5th hearing. That was in Will County? Yes, sir. There's not been any other hearings since then? Only on unrelated issues, procedural, but no. Okay. But December 5th, you filed, if I've got this correct, you filed the PLA three days later on December 8th. Right. And we wouldn't have acted on it even if we did act on it in January. It would be the earliest. And the ruling from the court came out before the end of December. I think somebody said it was December 22nd. Is that right? Which ruling? I thought maybe Justice Tice had said there was a December 22nd ruling. Maybe you did. Somebody did. November 22nd, I think, is the date. Oh, November 22nd. Right. And November 3rd, the mandate issue, right? And then the case went back to the trial court on November 22nd, and then the trial court set it for a hearing on December 5th. Right. And made a ruling on December 5th. Correct. And the PLA was filed on December 8th. Correct. The PLA and the motion for a stay, correct, were filed concurrently. You have no quarrel. I obviously have a quarrel with what happened with the preliminary injunction. However, you mentioned earlier that the appellate court misconstrued, in their particular opinion, and they misconstrued the fact that there was a motion for a directed finding and you didn't get to put on any proof. Right. But you probably don't have any quarrel. I mean, there's no cause for this court to look at that aspect of it because the trial judge did have a hearing, right? Correct. Okay. Correct. And, Mr. Ruber, excuse me, one other question. I believe Mr. Boddy, isn't it, said there are two children in California and one here? Yes. Now, how did that happen? The oldest child, Karina Coulter. Well, let me ask you, is that an agreement and is that a court order? No. So it's an agreement between the parties? No. She refused to go and Judge Braun, in his discretion, chose not to force her. But the judge didn't rule on it. No. The judge tried to convince her to go in like an informal conference with the attorneys and the parties. They tried to convince her to go to California because that was, you know, the order of court at the time. And she's 14 or 13? Yes, 13 or 14. And she refused. And as Judge Braun said, he wasn't going to force her on the plane. And that's the answer as to why one child is here. Thank you. Thank you. Case number 113474, Coulter v. Trinidad, is taken under advisement as agenda number 15. That concludes the call of the docket for oral argument for May 2012. Mr. Marshall, the Illinois Supreme Court stands adjourned.